UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

01 NOV 29 PM 1:53

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| LULA T. BECKWITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-00-S-2944-NE |
| | ) | |
| COMMUNICATIONS WORKERS OF | ) | |
| AMERICA (CWA), | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED

NOV 29 2001

## MEMORANDUM OPINION

Plaintiff, Lula T. Beckwith, alleges that her national union, the Communications Workers of America ("CWA"), breached the duty of fair representation imposed by Section 301 of the Labor Management Relations Act of 1947. *See* 29 U.S.C. § 185(a);[1] *see also, e.g., Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The action currently is before the court on defendant's motions for summary judgment, and, to strike plaintiff's amended complaint. Upon consideration of the pleadings, briefs, and evidentiary submissions, this court concludes both motions are due to be granted.

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.

---

[1] Section 301 of the Labor Management Relations Act provides, in pertinent part, that

[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

56(c).  Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

## I. SUMMARY OF FACTS

Plaintiff's claims implicate the grievance procedures specified in collective bargaining agreements between CWA and BellSouth Telecommunications, by the terms of which BellSouth recognized CWA "as the exclusive bargaining representative of all employees of the Company except for supervisors and professional employees...."[2]  Accordingly, to place plaintiff's claims in

---

[2] Plaintiff delivered a bound copy of the most recent collective bargaining agreement (executed on August 9, 1998) to the clerk on August 28, 2001, the date on which she filed her amended complaint (doc. no. 20).  (The only identification of the document is found in the lower right-hand corner of the cover page: a handwritten notation reading "Exhibit to # 20.")  Photostatic copies of selected pages from the same document were attached as "Union Exhibit 2" to the declaration of Jack Baccari, CWA Representative assigned to the Alabama State Office in Birmingham, and submitted in conjunction with defendant's brief in support of summary judgment (doc. no. 18).  Copies of previous collective bargaining agreements were not submitted by either party.  Even so, the record suggests that BellSouth and CWA maintained similar agreements at all times relevant to the present action.  Consequently, this court has relied upon the language contained in the only agreement submitted by either party to this action.

2

proper context, it is necessary to first sketch the contours of those procedures.

## A.    The Grievance Procedure

Article 21 of the collective bargaining agreement[3] establishes a four-step procedure for the

adjustment of employee grievances: *i.e.,*

| 1st Step | — | The Informal Level (the level where the aggrieved employee is employed) |
| 2nd Step | — | Panel Process/***Formal*** Level |
| 3rd Step | — | State Level |
| 4th Step | — | Executive Level[4] |

The first two steps of that progressive procedure are processed by employee representatives of the

local union affiliate.[5]

If an employee desires to pursue a grievance beyond the first step, the collective bargaining

agreement requires that a written request be filed within 60 days from the date of the occurrence of

the last event on which the grievance is based, *and,* within 14 days following the first step

("Informal Level") meeting.[6]  BellSouth and CWA representatives have the responsibility to meet

and discuss the issues raised within 60 days of the employee's request for a second step ("Formal

Level") grievance meeting, although the parties may mutually agree to extend the time period by

---

[3] *See id.,* at 189-202; *see also id.* at 143-44 (Article 11, stating that suspensions, discharges, and demotions will be handled in accordance with the "full grievance procedure set forth in Article 21.").

[4] *Id.,* art. 21.01C, at 189-190 (boldface italicized emphasis in original).

[5] Baccari declaration ¶ 1 (attachment 1 to defendant's brief in support of motion for summary judgment). The first step of the procedure — the so-called "Informal Level" — is defined as follows:

> Before formal grievances involving matters other than discharges and demotions are filed at the 2nd Step, there must have been an Informal Level meeting or conference with the appropriate Union or Company representatives, normally the local steward and the immediate supervisor.  This meeting may be waived by mutual consent where appropriate.  When necessary, the Union may request the presence of an involved grievant(s).  This meeting is intended to allow both sides to fully explore the incident, develop the facts, state their contentions, clear up any possible misunderstandings and attempt to informally resolve the dispute. ***No record will be made at this meeting or conference; no papers, forms or written answers are to be filed.***  (For pay treatment see 21.03 and 21.04.)

Collective bargaining agreement, art. 21.01C1, at 190 (boldface italicized emphasis in original).

[6] *Id.* art. 21.01C2 (first para.), at 190.

3

30 days.[7]  Grievance hearings at the second step/formal level are conducted by a panel composed of two CWA and two BellSouth representatives.[8]

If an employee is not satisfied with the panel decision, she may proceed to the third step of the grievance process, at which point " a joint brief, outlining both CWA and Company viewpoints, will be prepared by panel members and forwarded to the State Level."[9]   The CWA Staff Representative must request a meeting with the designated Management Representative within 30 days of the date of appeal.  This normally occurs within 30 days of the request, although the time may be extended to 60 days if the parties mutually agree.[10]  If the parties do not agree upon an adjustment of the grievance at that initial meeting, BellSouth's management representative is required to inform CWA of the company's position in writing within seven days.  CWA then is required to advise BellSouth within fourteen days (90 days for discipline related grievances) from the date when the union/employee representative receives the management representative's written position statement whether the company's proposed disposition is accepted, rejected, or appealed.[11]

Following the CWA staff representative's determination to accept, reject, or appeal the company's proposed disposition, the grievance may proceed to the fourth and final step of the process, the so-called "Executive Level."  On grievances appealed to this level, the appropriate BellSouth representative should meet with CWA within 30 days after CWA has requested a conference on the grievance, although CWA and BellSouth may agree to a fourteen day extension.[12]

Article 23 of the collective bargaining agreement provides one further level for adjustment

---

[7] *Id.* art. 21.01C2c, at 193.

[8] *Id.* art. 21.01C2a, at 191.

[9] *Id.* art. 21.01C2a5, at 191.

[10] *Id.* art. 21.01C3a, at 194.

[11] *Id.* at 195.

[12] *Id.* at 196-97.

4

of employee grievances, stating that, "[i]f at any time a controversy should arise between the parties ... as to the performance of an obligation" under the agreement "*which the parties are unable to resolve by use of the grievance procedure*, the matter will be arbitrated upon written request of either party to the other."[13] "Such a request for arbitration will be made within 90 days from the date of the final decision in writing on the grievance, unless the failure to make such a request will be excused by the Arbitrator because of extraordinary circumstances ...."[14]

## B.  Plaintiff's Employment History

Plaintiff graduated from Alabama A&M in 1973 with a bachelor of science degree in Business Administration.[15]  She began working as a toll and assistance operator at BellSouth's Huntsville location on January 26, 1976.[16] She became a member of CWA and Local 3905, and was certified as a union steward in 1994.[17]  Plaintiff processed somewhere between fifteen and twenty-five grievances for other employees in her capacity of union steward.[18]  She did so at both the first and second steps (informal and formal levels) of the grievance procedure described above.[19]

## C.  Plaintiff's Personal Grievances

Plaintiff also filed five grievances on her own behalf.  Her first arose on September 11, 1994, when she was suspended following a verbal exchange with a BellSouth customer.[20]  Her second also flowed from a customer complaint during May of 1996, which resulted in a three day suspension.[21]

---

[13] *Id.* at 203 (emphasis supplied).

[14] *Id.*

[15] Defendant's brief (doc. no. 18), attachment 2 (plaintiff's deposition), at 15.

[16] Plaintiff's affidavit (doc. no. 23), at ¶ 2.

[17] Defendant's brief (doc. no. 18), attachment 2 (plaintiff's deposition), at 16-17.

[18] *Id.* at 18.

[19] *Id.* at 19.

[20] *Id.* at 24-25.

[21] *Id.* at 29.

Similarly, her third grievance grew from a customer complaint in May of 1998, and it also resulted in a suspension.[22]  Although plaintiff grieved all three of these suspensions, she did not pursue any beyond the second step of the progressive procedure described above.[23]

### 1.   The fourth grievance

Plaintiff's fourth grievance concerned her termination on October 20, 1998.  Plaintiff left work on August 21, 1998, suffering from both physical and psychological problems.[24]  BellSouth subsequently advised plaintiff by means of a letter dated October 15, 1998 that she had not been certified for "Sickness Disability Benefits," and that she would be terminated if she did not return to work, or provide sufficient medical evidence of her alleged total disability.[25]  Plaintiff did neither. Accordingly, she was terminated on October 20, 1998, for failing to report to work following a request for adequate medical documentation of her disability.[26]  Plaintiff grieved that decision during November of 1998.[27]  Although the collective bargaining agreement required that CWA and BellSouth representatives meet to discuss the issues within 90 days, the meeting was not held until March 25, 1999.[28]  BellSouth refused to set aside plaintiff's termination or agree to a settlement,[29] and recessed the meeting against plaintiff's request.[30]

Plaintiff appealed her termination to the "State Level" of the grievance procedure, where her

---

[22] Id. at 31.

[23] Id. attachment 1 (Baccari declaration) ¶ 3.

[24] Id. attachment 2 (plaintiff's deposition), at 107.

[25] Id., attachment 3 (January 16, 2001 Arbitration Opinion and Award), at 3-4.

[26] Id. attachment 2 (plaintiff's deposition), exhibit 6 (Record of Grievance), at 2; see also plaintiff's affidavit (doc. no. 23), at ¶ 3.

[27] Plaintiff's affidavit (doc. no. 23), at ¶ 4.

[28] Id. ¶ 5.  Although plaintiff describes this as a first step meeting, the March 25, 1999 meeting most likely was a second step/formal level meeting before a panel, because grievances involving discharges are not required to go through the first step/informal level of the progressive grievance procedure.

[29] Defendant's brief in support of summary judgment (doc. no. 18), attachment 2 (plaintiff's deposition), exhibit 6 (October 18, 1999 letter from Baccari to plaintiff).

[30] Plaintiff's affidavit (doc. no. 23), at ¶ 6.

claims were reviewed by Jack Baccari, the CWA representative assigned to the Alabama State Office in Birmingham.[31] Without contacting plaintiff to determine her version of the facts,[32] Baccari recommended against pursuing her termination grievance, because he did not believe that the CWA had a reasonable chance of obtaining a favorable outcome.[33]  Baccari instead determined, after reviewing the information in plaintiff's grievance file, that she had failed to take advantage of two opportunities to return to work, or to submit additional medical information substantiating her claim of total disability.[34]  Baccari therefore closed his file on plaintiff's grievance on October 18, 1999.[35]

Plaintiff then appealed to the fourth step, or "Executive Level" of the grievance procedure, where her file was reviewed by CWA Vice-President James E. Smith.[36]  Smith reversed Baccari's decision, and directed that plaintiff's termination grievance be pursued to arbitration.[37]

Thomas Green initially was selected to arbitrate plaintiff's grievance, and the hearing was scheduled for February 24, 2000, pursuant to the expedited arbitration procedures contained in the collective bargaining agreement.[38]  Upon determining that plaintiff had filed a complaint in federal court challenging her suspension and termination, however, BellSouth insisted, pursuant to the terms of the collective bargaining agreement, that her case could no longer proceed under the *expedited* arbitration procedures.[39]  Thereafter, Robert Light was selected to arbitrate plaintiff's grievance

---

[31] *Id.* at ¶ 7; *see also* Defendant's brief in support of summary judgment (doc. no. 18), attachment 1 (Baccari affidavit), at ¶¶ 1,4.  Although plaintiff states that Baccardi received her grievance in August of 1999, the record does not reflect when she appealed the grievance to the state level.

[32] Plaintiff's affidavit (doc. no. 23), at ¶ 7.

[33] Defendant's brief (doc. no. 18), attachment 1 (Baccari affidavit), at ¶ 4.

[34] *Id.*, attachment 2 (plaintiff's deposition), exhibit 6 (October 18, 1999 letter from Baccari to plaintiff).

[35] *Id.*

[36] *Id.*, attachment 2 (plaintiff's deposition), at 164.

[37] *Id.*, attachment 1 (Baccari affidavit), at ¶ 4.

[38] *Id.*, attachment 2 (plaintiff's deposition), exhibit 9 (December 17, 1999 letter from Baccari to Luther Christian, president of CWA Local 3905).

[39] *Id.*, attachment 2 (plaintiff's deposition), exhibit 11 (February 4, 2000 letter from Bacarri to Mary Layton, president of CWA Local 3905).

under regular arbitration procedures.[40]  Due to a scheduling conflict, however, Charles J. Morris

replaced Light as the arbitrator, and the case was rescheduled for hearing on October 12, 2000.[41]

Although plaintiff requested a different representative,[42] Baccari prosecuted plaintiff's

arbitration case before Morris on October 12, 2000.[43]  Morris issued his opinion and award on

January 1, 2001, ruling in plaintiff's favor.  As a result of the ruling, plaintiff was reinstated and

awarded full back pay, together with interest and all benefits — an award worth more than

$79,000.[44]

Following her termination, and while the foregoing grievance proceedings were ongoing,

plaintiff filed for social security disability benefits.  She subsequently was determined to be totally

disabled, and was awarded disability benefits retroactive to August 21, 1998, the last day she had

performed any work for BellSouth.[45]

## 2.    The fifth grievance

Plaintiff's fifth, and final, grievance grew from the closure of the BellSouth office at which

she had last worked.  (The office was closed on March 31, 2001.)  Prior to the closure, BellSouth

mailed plaintiff a package of information outlining her options under Article 7 of the collective

bargaining agreement,[46] which establishes the rights and options of BellSouth employees who

become surplus as the result of work force adjustments.[47]  Plaintiff was offered the opportunity to

---

[40] *Id.*, exhibit 12 (May 24, 2000 letter from Baccari to Layton).

[41] *Id.*, exhibit 13 (July 19, 2000 letter from Baccari to Morris).

[42] Defendant's brief (doc. no. 18), attachment 2 (plaintiff's deposition), at 164-65.

[43] *Id.*, attachment 1 (Baccari affidavit), at ¶ 4.

[44] *Id.*

[45] *Id.*, attachment 2 (plaintiff's deposition), at 106-07.  Plaintiff has not engaged in any gainful activity since August 21, 1998.

[46] *Id.* at 114-15.

[47] Amended complaint (doc. no. 20), exhibit (Agreement between Communications Workers of America and BellSouth Telecommunications) at 93-105.

transfer into a vacant position, bump an employee with less seniority, or request additional training to qualify for other positions within the BellSouth workforce.[48] Plaintiff admitted receipt of those materials, but testified that she chose not to review them.[49] When plaintiff did not respond, Gia Drummond telephoned her during February of 2001, and asked what she intended to do.[50] Plaintiff responded that she had not made up her mind, and that she was waiting for a decision on her application for Social Security disability benefits.[51]

Patricia Nance, a co-worker and friend, reminded plaintiff of the approaching deadline for declaring her Article 7 option.[52] On the due date, however, plaintiff faxed a letter to BellSouth stating that she still was waiting for the outcome of her application for Social Security disability benefits, and, had not made up her mind.[53] Ultimately, BellSouth again terminated plaintiff's employment, for failure to exercise any options under Article 7 of the collective bargaining agreement.[54] The company nevertheless provided her a termination allowance as required by Article 8.05 of the collective bargaining agreement.[55] Plaintiff was issued a check in the amount of approximately $45,000 on April 12, 2001.[56] Plaintiff thereafter filed her final grievance, which still

---

[48] Defendant's brief (doc. no. 18), attachment 1 (Baccari affidavit), at ¶ 5.

[49] *Id.*, attachment 2 (plaintiff's deposition), at 116-17.

[50] *Id.* at 113.  The record does not reveal any additional information about Gia Drummond or her role with BellSouth or CWA.

[51] *Id.* at 116.

[52] *Id.* at 118-19.

[53] *Id.*

[54] The record does not reveal the date of plaintiff's termination.

[55] Defendant's brief (doc. no. 18), attachment 2 (plaintiff's deposition), at 113, 125.  Article 8.05 provides in pertinent part:

> A termination allowance will be paid to a regular or temporary employee whose service is terminated under any of the conditions outlined below; moreover, service pension eligibility will not be a factor in determining whether an employee is eligible for a termination allowance.

> 1.      Laid off in conformity with 7.01.

[56] *Id.*

is pending.[57]

## II. DISCUSSION

### A.    Motion to Strike

Plaintiff did not assert — either in her initial complaint, or during her deposition — that her race was a factor motivating any of the decisions about which she complains in this action.  On August 28, 2001, however, plaintiff filed an amended complaint, alleging for the first time that CWA discriminated against her on the basis of race.  She claimed that "African-American employees of the Huntsville office of BellSouth have been discharged or otherwise disciplined at a disproportionate rate to similarly situated employees,"[58] and that CWA "has refused to assist African-American employees concerning the unlawful employment practices done in violation of federal law and the collective bargaining agreement."[59]

The problem with such allegations lies in their prejudicial tardiness.  The amended complaint was filed more than ten months after defendant's answered the original complaint,[60] nine months after the entry of a Scheduling Order providing that "[n]o cause of action, defenses, or parties may be added after March 2, 2001,"[61] three months after the appearance of her present attorney of record,[62] one month after the extended discovery cut-off date,[63] and twenty-five days after defendant

---

[57] Defendant's brief (doc. no. 18), attachment 1 (Baccari affidavit), at ¶ 5.

[58] Doc. no. 20 (amended complaint) ¶ 12.

[59] *Id.* ¶ 13.

[60] *See* doc. no. 4, filed November 3, 2000.

[61] Doc. no. 8, entered December 15, 2000, at ¶ 1.

[62] Plaintiff filed this action *pro se*, and pursued her claims in that capacity until her present attorney, Curtis Simpson, entered a formal appearance on May 23, 2001 (doc. no. 11).

Plaintiff filed her complaint on October 17, 2000, alleging that CWA "[f]ailed to represent her fairly as per union contract between Communications Workers of America and BellSouth Telecommunications." Complaint (doc. no. 1). She thereafter refers to denial of certain contractual benefits and her dissatisfaction with the processing of certain grievances. *Id.* Although plaintiff failed to identify the statutory basis for her claim, such actions brought by union members against their union are commonly referred to as claims for breach of the duty of fair representation, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

[63] The original Scheduling Order specified that "[a]ll discovery must be commenced in time to be completed

filed its motion for summary judgment, statement of undisputed facts, and supporting brief (with attached evidentiary materials).[64]  Worse, plaintiff did not file a motion seeking leave to amend her complaint, as required by Federal Rule of Civil Procedure 15(a).  Accordingly, defendant's motion to strike plaintiff's amended complaint will be granted.

## B.    Motion for Summary Judgment

The court therefore considers defendant's motion for summary judgment as addressing only the claims asserted in plaintiff's original complaint (and expounded during her deposition).  Plaintiff asserts that CWA "[f]ailed to represent her fairly as per union contract between Communications Workers of America and BellSouth Telecommunications."[65]  She claims that she was denied sickness pay,[66] short term disability, and long term disability benefits under the collective bargaining agreement.[67]  She also alleges that CWA failed to process her fourth grievance (relating to the October 20, 1998 termination) in a timely manner, failed to carry her grievance through the grievance procedure pursuant to the terms of the collective bargaining agreement, and failed to secure a termination allowance for her as provided in Article 8.05 of the collective bargaining agreement.[68]

Although plaintiff's complaint clearly focused on the handling of her fourth grievance, during deposition she testified that she instituted this action because of her dissatisfaction with the

---

by July 2, 2001" (doc. no. 8, ¶ 2), but that date subsequently was extended to July 27, 2001 (doc. no. 13), on motion of the defendant specifying that, "on the two occasions wherein Plaintiff agreed to a deposition date, she cancelled at the last minute" (doc. no. 12).

[64] *See* doc. nos. 16-18, all filed August 3, 2001.

[65] Complaint (doc. no. 1), at ¶ 1.

[66] At deposition, plaintiff specified that she was not awarded sickness benefits for the first seven days that she was absent from work during August of 1998. Defendant's brief (doc. no. 18), attachment 2 (plaintiff's deposition), at 164-65.

[67] Complaint (doc. no. 1), ¶ 2-4.

[68] *Id.* ¶¶ 5-8. Article 8.05 of the collective bargaining agreement provides that a termination allowance will be paid to a regular or temporary employee whose service is terminated under the agreement.

way that CWA had handled all of her grievances, *as well as the grievances of other employees over the last 30 years*.[69]  She also complained that CWA failed to protect her against "constant harassment from supervisors" when she was off work,[70] and that CWA representatives harassed her by urging her to submit documentation of her medical condition when she was off work due to sickness.[71]  With respect to her fourth grievance, plaintiff complained that:  it took too long to process through the grievance procedure;[72] Baccari initially declined to pursue her grievance to arbitration;[73] Baccari handled her case at arbitration after she requested that someone else represent her;[74] that Baccari refused to call her son as a witness;[75] CWA did not provide her with a copy of the hearing transcript;[76] and, it took too long for the arbitrator to render his decision.[77]

A number of plaintiff's claims are barred for failure to exhaust the exclusive grievance procedures provided in the collective bargaining agreement.  Although plaintiff filed grievances regarding each of her three suspensions,[78] she failed to appeal those grievances to the state level as provided by the grievance procedure.[79]

> An employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the Labor Management Relations Act ....

---

[69] Defendant's brief (doc. no. 18), attachment 2 (plaintiff's deposition), at 106-07.

[70] *Id*. at 177.

[71] *Id*. at 173-74.

[72] *Id*. at 156-67.

[73] *Id*. at 164.

[74] *Id*.

[75] *Id*. at 168.

[76] *Id*. at 170.

[77] *Id*.

[78] *Id*. at 24-25, 29, 31.

[79] Defendant's brief in support of summary judgment (doc. no. 18), attachment 1 (Baccari affidavit), at ¶ 3.

*Clayton v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 451 U.S. 679, 681 (1981). Accordingly, summary judgment is due to be granted with respect to these claims.

Moreover, the record fails to establish that plaintiff even initiated the grievance procedure with regard to a number of her other claims. For example, plaintiff's complaint states that she was denied sickness pay, short term disability, and long term disability benefits under the collective bargaining agreement after leaving work on August 21, 1998. The record contains no evidence that she ever filed a grievance regarding the denial of these benefits. Similarly, the record makes no mention of any grievance regarding the "constant harassment from supervisors" when plaintiff was off work, or the urging by CWA representatives to submit documentation of her disability that plaintiff characterized as "harassment." Accordingly, plaintiff has failed to utilize, much less exhaust, the grievance procedures established by the collective bargaining agreement, and summary judgment also is due to be granted with respect to these claims.

In like manner, to the extent plaintiff attempts to assert a claim regarding her most recent grievance, concerning her termination following the closure of the BellSouth office in which she last worked, any such claim is barred for failure to exhaust the grievance procedures established in the collective bargaining agreement.

Thus, the only claim remaining for discussion is plaintiff's assertion that defendant breached the duty of fair representation in processing her fourth grievance. To prevail, plaintiff must prove that CWA's handling of the grievance either was arbitrary, discriminatory, or done in bad faith. *See, e.g., Vaca v. Snipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916-17, 17 L.Ed.2d 842 (1967); *Harris v. Schwerman Trucking Co.*, 668 F.2d 1204, 1206 (11th Cir. 1982). The Supreme Court has emphasized the deferential nature of this standard:

13

> Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union. Rather, Congress envisioned the relationship between the courts and labor unions as similar to that between the courts and the legislature. Any substantive examination of the union's performance, therefore, must be highly deferential, recognizing wide latitude that negotiators need for the effective performance of their bargaining responsibilities. For that reason, the final product of the bargaining process may constitute evidence of a breach of duty only if it can be fairly characterized as so far outside a "wide range of reasonableness," that it is wholly "irrational" or "arbitrary."

*Air Line Pilots Association, International v. O'Neill*, 499 U.S. 65, 78, 111 S.Ct. 1127, 1135-36, 113 L.Ed.2d 51 (1991).

This court concludes that plaintiff has failed to demonstrate the existence of a genuine issue of material fact. Although plaintiff lodges numerous complaints about the manner in which her grievance was handled by CWA, defendant ultimately arbitrated the claim to a successful conclusion.[80] Plaintiff's employee status was restored, and she received full back pay, benefits, and interest totaling more than $79,000 — all this in spite of the fact that plaintiff

> has consistently maintained that she has been totally disabled from work and has received social security disability benefits retroactive to her last day at work. What more could she possibly expect CWA to do? Plaintiff merely quibbles about details[,] minutia[,] and her disappointment that the Union did not always meet her subjective and irrational personal requirements. This is not the stuff of which a legitimate fair representation claim is made.[81]

### III. CONCLUSION

For the foregoing reasons, defendant's motions for summary judgment, and, to strike plaintiff's amended complaint are due to be granted. An order consistent with this memorandum opinion shall be issued contemporaneously herewith.

---

[80] *Id.* at ¶ 4.
[81] Defendant's brief, at 13.

14

DONE this _29th_ day of November, 2001.

_____
United States District Judge